PATRICK McCARTHY *vs.* LEHIGH VALLEY TRANSPORTATION CO.

Argued Dec. 8, 1891.  Decided March 8, 1892.

**Evidence—Showing Contributory Negligence of Plaintiff.**—The case considered as showing that the plaintiff was chargeable with negligence contributing to his injury, he having been injured while standing in the hold of a vessel under an open hatchway, through which freight was being lowered into the hold, after having been warned by an officer of the vessel against standing in such a position.

Appeal by plaintiff, Patrick McCarthy, from an order of the district court of Ramsey county, *Otis,* J., made June 12, 1891, refusing a new trial.

At Gladstone, Mich., on September 12, 1889, plaintiff was temporarily employed to assist in loading defendant's steamer E. P. Wilder with flour in barrels.   He was in the hold of the vessel, receiving the barrels as they were lowered through the hatchway, and was unhooking the clamps from them, and rolling them back to be stowed. When set at work there, he was told by the mate having charge to stand clear from the hatch.   He disregarded this instruction, and went from under cover of the deck, and so placed himself that the open hatchway was over his head.   At that moment a crossbeam and the tackle attached fell down this open hatchway, and struck plaintiff, and he was seriously injured.

He brought this suit to recover damages for the personal injuries thus sustained, claiming that the crossbeam was not properly made or fastened in place, and that the apparatus was improperly constructed, out of repair, unsafe, and dangerous, and that it was operated too rapidly, and in an unskillful manner.   He claimed he was prudent and careful, and without fault or negligence in the premises. The defendant claimed that plaintiff was himself guilty of contributory negligence in placing himself, after the caution, in the space directly under the open hatchway.

The issues came to trial January 21, 1891.   After the evidence was all submitted, the court directed the jury to return a verdict for the defendant, saying:   "The duty of the master to furnish suitable

machinery and appliances to his servant is not an absolute duty. It is the duty of the master to use due care and diligence that the servant be provided with such machinery and appliances, and to use due care and diligence to see that such machinery is kept in proper order and condition for the work to be done.   There is no evidence in this case of negligence upon the part of the defendant in the performance of this duty.   There is another ground:   The testimony of the plaintiff himself shows that he stood in the hatchway under the block, and it is claimed by the defendant that that was a dangerous position.   If that were all that was disclosed by the evidence, I could leave that question to the jury; but we have, in addition to that, the undisputed testimony of the mate that the plaintiff was instructed not to stand in that position,—not to stand under the hatchway at all, but under the cover of the deck of the boat,—and it seems to me that, that being so, it is a case where the plaintiff must be held to have contributed to the injury by his own negligence; that is, by disobedience of orders, in getting in a dangerous place."

*J. L. Macdonald*, for appellant.

The entire controversy here is, in brief, whether there was evidence sufficient to require that the cause should have been submitted to the jury.

I do not think the mere happening of an accident proves negligence, *prima facie*, but, if it be proved that the accident occurred by reason of a particular defect, this is *prima facie* evidence, and sufficient to fix the liability of the defendant, unless it can explain that it was not negligent in regard to the defect, by showing that it used due care; and the burden is then on defendant to show this due care and diligence.   *Bennett* v. *Syndicate Ins. Co.*, 39 Minn. 254; *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482.

It is claimed by counsel that the evidence shows that plaintiff was guilty of contributory negligence.   This claim is in the nature of confession and avoidance.   We insist that there is no evidence in this case upon which to base this claim.   It is claimed that plaintiff was warned of the danger, and disregarded that warning.   The only thing in the testimony upon which this claim of warning is based is from the testimony in chief of the mate, John Terry, that "I told

him to stand clear from the hatch." There is not another word in the paper book but this, upon which to base such a claim of warning of danger to a servant whom the mate knew to be absolutely ignorant of the work, the place, and its dangers.

Where there are latent defects, or hazards incident to an occupation, of which the master knows or ought to know, it is his duty to warn the servant of them fully, and, failing to do so, he is liable to him for any injury that he may sustain in consequence of such negligence; and this rule applies even where the danger or hazard is patent, if, through youth, inexperience, or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard. If the danger is only obvious to the person having experience in the particular business, then it is the duty of the master to warn an experienced servant of such danger. Wood, Mast. & Serv. § 349; *Grizzle* v. *Frost*, 3 Fost. & F. 622; *Railroad Co.* v. *Fort*, 17 Wall. 553; *Walsh* v. *Peet Valve Co.*, 110 Mass. 23; *Atlas Engine Works* v. *Randall*, 100 Ind. 293; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Smith* v. *Peninsular Car Works*, 60 Mich. 501.

*Walter H. Sanborn,* for respondent.

There was no evidence that the master had any notice of any defects in the apparatus. The positive and uncontradicted testimony is that he never had any notice or knowledge of any defects in the machinery before the accident. The apparatus had been used for the season of 1888, and for thirteen loads in 1889, and it was used in the same way after the accident until July, 1890, and no other accident or trouble with it ever arose. Under this state of the evidence, no verdict in favor of the plaintiff could have been sustained.

There is positive and uncontradicted testimony in the record that the accident was caused by the negligence of plaintiff's fellow servants. It was their negligence, and that alone, that caused the beam to fall.

There is positive and uncontradicted testimony in this record that the plaintiff, by his own gross negligence, contributed to his injury. His duty was to unhook the clamps from the barrel at his end of

the hatch when it had reached the corn in the hold on which he stood. There was plenty of space under the deck, and clear of the hatchway opening, where he could stand at all times when the hooks or barrel were not resting on the corn. He had no duty to perform under the open hatchway when the hooks and barrel were above. He was ordered by the mate, when he went to work unhooking barrels, to keep clear of the hatchway. He was bound to take notice of the law of gravitation, and that there would always be danger under that open hatchway, with a barrel of flour of two hundred pounds weight dangling at the end of a rope above him. Yet in disobedience of the order of the mate, and in defiance of the law of gravitation, he stationed himself in the middle of the open hatchway when the hooks and barrel were above. This disobedience and defiance caused his injury. If he had obeyed the mate's order, if he had used the least care to protect himself against the danger of descending bodies through the hatchway, when he knew some bodies would descend, he would not have been injured. This action of his so contributed to his injury that he cannot recover. Justice Miller, of the United States supreme court, said the law was that if a man voluntarily and unnecessarily puts himself into a dangerous position, where there are other positions that he may take, in the discharge of his duty, that are safe, he cannot recover damages for that injury, to which he has contributed by his own negligence. *Cunningham* v. *Chicago, M. & St. P. R. Co.*, 17 Fed. Rep. 882; *Rogstad* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 208; *Brown* v. *Milwaukee & St. P. Ry. Co.*, 22 Minn. 165; *Mantel* v. *Chicago, M. & St. P. Ry. Co.*, 33 Minn. 62; *Sweeney* v. *Minneapolis & St. L. Ry. Co.*, 33 Minn. 153; *Potter* v. *Chicago & N. W. Ry. Co.*, 21 Wis. 372; *Cunningham* v. *Lyness*, 22 Wis. 245; *Cremer* v. *Town of Portland*, 36 Wis. 92; *Dreher* v. *Town of Fitchburg*, 22 Wis. 675.

DICKINSON, J. This action is for the recovery of damages for injuries sustained by reason of the alleged negligence of the defendant while the plaintiff was engaged in its service. When the evidence was closed, the court directed a. verdict for the defendant, both because it was considered that the case did not show negligence on the part of the defendant, and that it did show that by his own

negligence the plaintiff had contributed to bring about the injury. Our review of the case on this appeal has led to the conclusion that for the latter of those two reasons the direction of the court was right, and it becomes unnecessary to pass upon the other question. The facts will therefore be stated only so far as may be necessary to the understanding of what will be said as respects the subject of the plaintiff's negligence.

A large steamboat of the defendant was lying at the port of Gladstone, in the state of Michigan, taking in a cargo, consisting, in part, of flour in barrels. The plaintiff, with some other laborers, had been employed only a few hours before the accident to assist in this work. The flour was being lowered from the main deck of the steamer, through a hatchway about eight feet square, into the hold, by means of ropes, which were provided with hooks, to attach to the chimes of the barrels, and which ropes ran through blocks attached to timbers, fitted into the hatchway in the upper deck, immediately above the hatchway in the main deck, above referred to. The ropes running through such blocks were connected with a winch on the main deck. The barrels descended into the hold by their own weight; the speed being controlled by means of a brake attached to the winch, which was operated by one of the crew. One of these timbers and blocks was near each side of the upper hatchway; the arrangement being such that barrels were lowered into the hold from the main deck on both sides of the lower hatchway; a barrel going down on one side, and then on the other, alternately. The plaintiff was stationed in the hold to unhook the rope from the barrels as they came down on one side only of the hatchway. The timbers across the upper hatchway, with the blocks attached to them, were placed in such position that the barrels going down into the hold would just clear the side of the lower hatchway, so that it was not necessary for the plaintiff to stand out fully under the hatchway, in the way of the descending barrels, but he might as well avail himself of the protection of the deck above his head. It appears without dispute that he was directed by the mate of the boat to "stand clear from the hatch." In the course of the operation of lowering barrels into the hold, a barrel to which the rope had been attached was lifted or thrown over the combing of the

lower hatchway by the men working on the main deck in such a manner that it dropped a distance, variously given in the evidence, of from two inches to two feet, before it took up the slack of the rope; and, as the rope became taut, and the strain came upon the block and timber in the upper hatchway, the timber was displaced, and, with the heavy block, it fell through the between-decks, through the lower hatchway, and into the hold, where the timber and the block struck the plaintiff, inflicting serious injury. There was testimony that he was then standing in a position fully under the open hatchway, and quite away from the space under the deck; that he *stepped out of the way of the barrel*, which of course fell when the timber ceased to support it; but that the timber and the block struck him. This direct evidence, which was largely given by witnesses testifying in behalf of the plaintiff, was not opposed by any evidence which can be said to contradict it. It is true that while the plaintiff testified on cross-examination that he was in the middle of the hatchway, and that he probably followed the barrels to the end of it after unhooking them from the rope, he does say "*Yes*" in answer to the question, on redirect examination, whether he does not mean that he was at the middle of the end of the hatchway. This does not really controvert the evidence before referred to, which placed him fully under the hatchway, but near the end or side, and about where the barrels came down.

In view of the order to stand clear of the hatchway, we think that the court did not err in his estimate of the effect of the evidence. The only reason suggested for the plaintiff being in the position above indicated, contrary to his orders, is that the hold was getting so full, the barrels being stowed so near to the hatchway, that he had not room to stand elsewhere. But the evidence is to the contrary. It is shown that the barrels were being stowed some 15 feet back from the hatchway, that there was sufficient room for the plaintiff to stand under the protection of the deck, and that there was no reason requiring him to stand where he did. This is only opposed by the testimony of the plaintiff, who does not seem to have known or to have observed how much space remained around the hatchway where cargo had not been stowed. As to this, he says he does not know.

Again he estimates the distance as three or four yards.    He adds: "I believe they were getting pretty close onto me.    *    *    *    The back part of the hatchway was all pretty well full.    They [the men engaged in stowing away] were getting close to where I was lowering."    It is noticeable that he does not say that he had not room to stand and work in the place assigned to him, clear of the hatchway, and he states no reason for being in the place he occupied. We think, therefore, that the case cannot be deemed to show any excuse for conduct which was in contravention of the order given to him but a few hours before, and which unnecessarily exposed him to the injury for which he seeks to recover.

Order affirmed.

(Opinion published 51 N. W. Rep. 480.)